Dorothea E. Donaldson, J.
At trial, the parties stipulated that the only issue to be tried was that of the liability of the defendant, and in the event liability was found, the claim would be restored to the trial calendar for proof of damages.
Mrs. Laura Smith, the operator of a school bus for the Town of 'Clarkstown Central School District No. 1, sustained injury on March 1-6,1971. She returned to work and received her wages until her complaints were diagnosed as fractured vertebrae. Based thereon, workmen’s compensation benefits were paid to her commencing May 27,1971 in accordance with the provisions of the standard, workmen’s compensation policy carried by the Town of Clarkstown ¡Central School District No. 1 with the Atlantic Mutual Insurance Company for the year September 1, 1970 to September 1, 1971. The notice of intention to file claim submitted by the workmen’s compensation carrier was received and filed by the Clerk of the Court of Claims on June 11, 1971. Thereafter, on March 15,1972, Mrs. Smith moved in the 'Court of Claims .for an order permitting her to file a late claim against the State of New York in accordance with the provisions of section 10 of the 'Court of Claims Act; by order filed May 12, 1972, the motion was denied stating, in part, that “ Claimant’s excuse for failure to file under Section 10, paragraph 3, of the Court of Claims Act was not reasonable under the circumstances.” Appeal from this order was taken to the Appellate Division, Third Department, where motion to dismiss the appeal was granted by default without costs on September 21, 1972. The compensation carrier, in a letter dated March 1, 1972, advised Mrs. Smith’s attorney to file a late notice of claim on behalf of his client within 90 days. By letter dated September 20, 1972, Mrs. Smith’s attorney was contacted by claimant to determine the outcome of the motion and the order predicated thereon. Atlantic Mutual Insurance Company then advised Mrs. Smith by letter dated January 26,1973 that she could proceed to sue in her own name, was directed to initiate an action within the following 30 ¡days, and if she failed to do so, it, as carrier, would become subrogated to her rights among which would be the right to commence an action against the responsible third party. On March 7,1973, the company filed claim with the Clerk of the Court of Claims, within the two-year statutory time limitation, as alleged subrogee of Mrs. Smith’s rights provided by the provisions of section 29 of the Workmen’s Compensation Law.
*456 _ The .State maintained, first, since Mrs. Smith, on June. 11,1971,’ had neither assigned her claim nor acquiesced nor consented, that the Atlantic Mutual Insurance Company had ño status and no basis to file a notice of intention to file claim, and,, second, that when Mrs. iSmith did file her claim against the State, the statutory period .within which to file had expired.
On the morning of March '16, 1971, a clear day with good visibility, at about 8:30 in the morning, three cars — a privately owned and operated station wagon, a car owned by the State Department of Transportation and a yellow school bus station wagon owned by the Town of Olarkstown 'Central School District No. 1 — sustained damage at the "T” intersection of Demarest Avenue with Main Street in NewCity. Main Street is a two-láne highway, northbound and .southbound; Demarest' Avenue is- an east-west two-lane roadway terminating at Main Street.
At trial, the partie's stipulated that a State owned arid operated automobile was" one of the motor vehicles involved, the driver of which was a 'State employee in* the course of- his employment.
Laura Smith,- thé chauffeur of the school bus, testified that she had completed her moniing run and was returning to the garage situated about two'miles distant on Parrot Road-; that she was proceeding southerly on Main Street at 15 miles, per hour, on a slight upgrade as she^ approached the Demarest Avenue intersection ; that she saw both the State vehicle traveling westerly on Demarest Avenue and the station wagon on Main Street approaching northbound; that she did not attempt to pull, to the,curb or slow her speed; that she wap aware that,the Demaiest intersection had a " stop ” sign and believed that phe had thé right of way; that the State car strück her station wagon with a heavy impact on thé driver’s side; that she heard no ’horn and saw no flashing indicator signals; that she applied her brakes seconds befo-fe the impact; and -that her 'bus stopped at the.point of impact while the State car kept moving and struck the other. station wagon.
- The driver of the 1970 Town and Country .station wagon, Mrs. Margaret H. Costanzo, testified that she had left her children at a school and was proceeding northerly on Main. Street, to a bakery when she saw the school bus coming southbound ¡as well as the State car traveling westerly on Demarest Avenue; that her speed was about 25 miles per hour ; that she saw the State vehicle pass, the stop sign; that she braked her car and came to a stop; that she saw the State Ford automobile strike the school bus; that the driver of the State car continued moving *457 in a left turn southerly; that the Ford struck her car four times on the entire left side; that"she heard no horn.or- sounds; that she saw no change in the speed of the school hus;' that her car was at a complete stop when it was struck by the State car; and that as far as she knew, the State .car had continued its.progress to the post office,
• Claimant’s two witnesses; an employee of the Clarkstown Central iSchool District, Anthony DiColandréa, and an employee of the Aldorf Realty Oorp., Albert Dorfman, who had given his name to the police as a witness, supported the testimony of Mrs. ¡Smith and Mrs. Costanzo.
Harvey L. Crane, a State employee, who was the- driver of á black Ford motor car owned by the St^te Department of Transportation, testified that, 'on the d^y in question, he was proceeding from the Department of Transportation headquarters on Ridge Road in New City to the post office on Mam Street to pick up the matil; that he travelled west on Deimarest Ayenué; that he came to the “ T ” intersection, proceeding at 10 miles, pér hour; that he stopped even with the stop sign; that he looked to the right and-to- the left; that.he saw no traffic at his left; . that he had a clear view to the north at his right; that he did not notice the school van until after the collision; that he had completed half of the left turn to the south when he saw the school bus proceeding rapidly; that he then accelerated his .own. car; that the. State vehicle made moderate contact with the bus and then. struck the northbound station wagon; after the collision, he pulled the Ford to the curb to get out of the line of traffic, ,radioed his headquarters and asked the assistant engineer to come; and that the right, front and left front of the Ford oar were damaged.
Both roadways wére narrow streets. The. intersection was not controlled by traffic lights, but by a posted standard “ stop.’’ sign. The Vehicle and Traffic Law, of the State of New; York specifically- states the obligations' of motorists. Section 1141 is applicable "when7 the driver of a motor vehicle intends to turn to the left, and indicates that the vehicle approaching from the opposite direction has the. right of way. "Where an intersection is controlled by a stop sign," section 1142 directs that the driver of the vehicle approaching the sign shall yield the right , of way to vehieles^on the highway approaching close to the intersection. Section 1163 provides that the driver of a vehicle shall not enter an intersection unless, the movement can be done with reasonable safety.
*458 The court 'believes, and so finds, that all the motor vehicles involved herein were proceeding within the regulated speed limit; that the cars travelling on Main 'Street had the right of way; and that the driver of the State owned car failed to exercise reasonable care and safety upon entering the “ T ” intersection and turning southward. It is this failure that, in the opinion of the court, constitutes negligence.
The 'Court of Claims Act and the Workmen’s Compensation Law both establish time limitations within which an action shall commence. Subdivision 3 of section 10 of the Court of Claims Act states: “ A claim to recover damages for injuries to property or for personal injury caused by the tort of an officer or employee of the state while acting as such officer or employee, shall be filed within ninety days after the accrual of such claim unless the claimant shall within such time file a written notice of intention to file a claim therefor, in which event the claim shall be filed within two years after the accrual of such claim. ’ ’
■Subdivisions 1 and 2 of section 29 of the Workmen’s Compensation Law, relating to the remedies of the employees and subrogation, provides specific time limitations incorporated therein reflecting the right to pursue a remedy against a party other than the employer rather than to take compensation and medical benefits. Subdivision 1 recites a period of six months after the awarding of compensation or within nine months after the creation of a law permitting such remedies in which to elect to commence an action, and states that notice of the commencement of such action shall be given within 30 days thereafter to the chairman of the Workmen’s Compensation Board, the employer and the insurance carrier upon a form prescribed by the chairman. Subdivision 2 establishes the procedure by which an insurance carrier becomes a subrogee in the event that an injured employee fails to commence an action as hereinbefore indicated, providing that such failure “ shall not operate as an assignment of the cause of action as provided herein, unless the insurance carrier shall have notified the claimant in writing by personal service or by registered mail at least thirty days prior to the expiration of the time limited for the commencement of an action by subdivision one, that such failure to commence such action shall operate as an assignment of whatever cause of action may exist to such insurance carrier. ’ ’ It states that: “If the insurance carrier shall fail to give such notice, the time limited for the commencement of an. action by subdivision one shall be extended until thirty days after the insurance carrier shall have notified the claimant in writing that failure to com *459 menee an action within thirty ¡days after the mailing of such notice shall operate as an assignment of the cause of action to such carrier. ”
Paragraph 12 of the conditions in the 1970-1971 standard workmen’s compensation policy, titled subrogation, states: “ In the event of any payment under this policy, the company shall be subrogated to all rights of recovery therefor of the insured and any person entitled to the benefits of this policy against any person or organization, and the insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The insured shall do nothing after loss to prejudice such rights. ”
Clearly a conflict with respect to the time limitations exists between the Court of Claims Act and the "Workmen’s Compensation Law. The purpose of the 90-day limitation within which to file a notice of intention to file claim provided by section 10 is to advise the ¡State that in the future and within the two-year period from the accrual of the cause of action, a claim will be made against the .State for damages. The time limitations within which an insurance carrier has the right to commence an action under the subrogation provisions of the standard workmen’s compensation policy and the obligations that must be fulfilled by it with the injured employee prior to the commencement of such action are outlined in section 29.
When claimant filed its notice of intention to file claim with the Court of Claims, it was neither an assignee nor a subrogee of Mrs. .Smith, expressly or implied by operation of law. However, at the time the claim itself was filed, carrier was the subrogee by operation of the law under section 29 of the Workmen’s Compensation Law. While it is advisable that a claimant have all of the indicia of the right to sue at the time that the notice of intention to file claim is received ¡by the Clerk of the Court of 'Claims, it did have an incipient or latent or prospective right to protect. This prospective right .was the anticipation of the injured employee’s inadvertence or inactivity to commence an action against a ¡party other than the employer. Predicated upon such contingency, the claimant has complied strictly with the provisions of section 10 of the Court of Claims Act. (Commissioners of State Ins. Fund v. Town of Howard, 177 Misc. 820.)
The court therefore denies the motions of the defendant to strike the notice of intention to file the claim and/or to dismiss the claim,
*460 The claimant has sustained the ¡burden of proof and proven that its subrogor was free from contributory negligence.
The .State, therefore, is liable.
The court directs that the claim be restored to the trial calendar for submission of proof of damages.